**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **PHILIP L. MOLAISON,** | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 1:09-CV-158-C |
| | § | ECF |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION**

**THIS CASE** is before the court upon Plaintiff's complaint filed August 26, 2009, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. On August 28, 2009, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff filed a brief in support of his complaint on March 26, 2010, Defendant filed a brief on April 15, 2010, and Plaintiff filed his reply on May 10, 2010. This court has considered the pleadings, the briefs, and the administrative record and recommends that the United States district judge reverse the Commissioner's decision and remand this case for further administrative proceedings.

### I. STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on November 13, 2007, alleging disability beginning October 5, 2007. Tr. 11. Plaintiff's application was denied initially and upon reconsideration. Tr. 11, 50-57. Plaintiff filed a Request for Hearing by Administrative Law Judge

on March 20, 2008, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 30, 2008. Tr. 11. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 23-32. Dr. Billinghurst, a medical expert ("ME"), and Suzette Skinner, a vocational expert ("VE"), appeared and testified as well. Tr. 33-44. The ALJ issued a decision unfavorable to Plaintiff on February 4, 2009. Tr. 8-19.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements at least through December 31, 2011, and that Plaintiff had not engaged in substantial gainful activity at any time since October 5, 2007. Tr. 13. Plaintiff has "severe" impairments, including degenerative lumbar disc disease with chronic pain syndrome (status-post lumbar laminectomy and fusion) and sleep apnea. *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 14. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. *Id.*

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 15.

The ALJ found that Plaintiff retained the RFC to perform light work activity, with additional limitations. He should not be required to: stoop, balance, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; climb scaffolds, ladders, and ropes; sit for more than 15 minutes at

one time without the opportunity to stand or walk (in addition to a lunch and normal legal breaks during the workday); stand more than 15 minutes at one time without the opportunity to sit; stand/walk for more than 4 hours out of an 8-hour workday; push or pull with his feet (as in operation of machine controls); or work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 14.

The ALJ found that Plaintiff could return to his past relevant work as a training coordinator. Tr. 18. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. *Id*.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 26, 2009. Tr. 5-7. The Appeals Council denied Plaintiff's request and issued its opinion on June 24, 2009, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 1-4. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 26, 2009, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court

will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 4 that Plaintiff was not disabled because he retained the ability to perform his past relevant work. Tr. 18.

### III. DISCUSSION

Plaintiff claims that the ALJ erred in rejecting the opinion of Dr. Billinghurst, the medical expert, who opined that Plaintiff's impairments were equivalent in severity to section 1.04 of the Listing of Impairments.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in Appendix 1 of 20 C.F.R. Part 404. The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe

impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff argues that the evidence of record demonstrates that his impairments are equivalent in severity to section 1.04 of the Listing of Impairments. To meet the listing under § 1.04, the Plaintiff must show that she has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, § 1.04.

The record demonstrates that the ME testified that Plaintiff's impairments were equivalent to Section 1.04 of the Listing of Impairments. Tr. 35. The ME testified that Plaintiff has a disorder of the spine, with compromise of the nerve root, as shown by an MRI indicating scarring on the right side. *Id*. The ME testified that Plaintiff has a neuroanatomic distribution of pain, limitations of range of motion, and intermittent motor loss and sensory or reflex loss with positive straight leg raising. *Id*. The ME opined that Plaintiff has a "failed back, had two operations, two rhizotomies, injections, spinal cord stimulation, muscle relaxers, and side effects." *Id*. The ME indicated in his opinion that it is "reasonable to determine that his impairment would [be equivalent to] that listing, even though he doesn't continuously have the neurologic findings to meet this listing," from the alleged onset date forward. *Id*.

Pursuant to Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p") certain issues are "not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case," including "[w]hether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings." SSR 96-5p. The finding of equivalence "is an issue reserved to the Commissioner." *Id*. As SSR 96-5p notes, although "equivalence is addressed as a 'decision . . . on medical evidence only' because this finding does not consider the vocation factors of age, education, and work experience," this finding also "requires a judgment that the medical findings equal a level of severity" as set forth in 20 C.F.R. §§ 404.1545, 404.1546, 416.945 and 416.946, and, therefore, "it is an issue reserved to the Commissioner." *Id*. Social Security Ruling 96-6p (July 2, 1996) ("SSR

96-6p") explains with regard to the finding of medical equivalence to an impairment in the Listing of Impairments:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

While the finding of medical equivalence is ultimately an issue reserved to the Commissioner, SSR 96-6p makes clear that the judgment of a physician or a psychologist on the issue of equivalence should be received into the record. In most instances, the signature of a state agency medical consultant ("SAMC") indicates that the question of medical equivalence has been considered by a physician or psychologist. In this case the issue of medical equivalence was also specifically addressed by the ME, Dr. Billinghurst.

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equal the criteria of any impairment in the Listing of Impairments. 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), and 416.927(f)(2)(iii). When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert." An ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408 (1971).

In his opinion the ALJ indicated that he had considered the opinion of the ME, Dr. Billinghurst, but disagreed with the ME's conclusion that Plaintiff's experienced nerve root compromise as shown by the MRI of October 16, 2006, which indicated scarring. Tr. 16. The ALJ noted that as the trier of fact, he concluded that the MRI identified scarring at L5/S1, that it did not mention nerve root compression, and that scarring was not among the radiologist's impressions. Tr. 16-17. The ALJ also stated that motor loss was only clinically observed once by Dr. Gary L. Heath. Tr. 17.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* In weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician regarding the limitations imposed by Plaintiff's impairments solely because he has a different interpretation of the evidence. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir 2003) (where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

The ALJ's opinion further indicates that he gave limited probative value to the October 27, 2008, medical source statement of Plaintiff's treating physician, Dr. Heath, regarding the limitations imposed by Plaintiff's impairments on his ability to participate in work activity. Tr. 18. The ALJ indicated that he had considered the opinions of the non-examining SAMCs in finding that Plaintiff's impairments did not meet or equal in severity any section of the Listing of Impairments.

While it is true that the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, the record demonstrates that the ALJ rejected the opinion of Plaintiff's treating physician on the limitations imposed by Plaintiff's impairments and also rejected the opinion of the ME as to equivalence on the basis of the ALJ's own interpretation of the medical evidence of record. The ALJ indicated that he "disagree[d] with Dr. Billinghurst's conclusion," based on his own reading of the information contained in the MRI noted.

The court finds that the ALJ's stated reasons for rejecting the opinion of the ME are not supported by substantial evidence and are based on his substitution of his own lay interpretation of the medical evidence of record. The ALJ also rejected the opinion of Plaintiff's treating physician regarding the limitations imposed by Plaintiff's impairments on his ability to perform work activity. The ALJ indicated that he instead relied upon the opinions of non-examining SAMCs. While the ALJ is entitled to choose whichever medical opinion is most supported by the evidence and while the ALJ is entitled to weigh the evidence, his opinion must be supported by substantial evidence in the record. In relying upon his own interpretation of the evidence, while rejecting the opinions of the ME and Plaintiff's treating physician, the ALJ committed legal error. Such error was prejudicial, as it formed of the basis of his decision finding that Plaintiff was not disabled.

The court therefore finds that the ALJ's decision is not supported by substantial evidence in the record and that remand for additional administrative proceedings is appropriate. Upon remand, the ALJ should further describe the weight given to the opinions of the treating and non-examining physicians and for further development of the record as necessary.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States district judge reverse the Commissioner's decision and remand this case for further proceedings in accordance with this recommendation.

Plaintiff having refused consent to having the United States magistrate judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

DATED this 2nd day of March, 2011.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**